**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Keith BREWINGTON, Appellant.**

Superior Court of Pennsylvania.

Submitted April 5, 1999.

Filed Sept. 23, 1999.

Mitchell S. Strutin, Philadelphia, for appellant.

Catherine Marshall, Asst. Dist. Atty:, Philadelphia, for Com., appellee.

Before HUDOCK, JOYCE and STEVENS, JJ.

HUDOCK, J.:

¶ 1    Appellant appeals from the judgment of sentence imposed on June 7, 1991, after a jury found him guilty of murder in the first degree and criminal conspiracy.[1] Appellant was arrested on March 26, 1989 and a preliminary hearing was held on May 3, 1989.   Over the next two years, Appellant's trial was delayed by a total of ten continuances granted to Appellant's court-appointed counsel.   On May 16, 1991, the court finally called the case to trial and the trial was completed on June 10, 1991.   A penalty phase hearing was conducted, which concluded with the jury setting the penalty at life imprisonment. After the trial, Appellant's trial counsel left the practice of law.   On September 28, 1993, new counsel was appointed for the purpose of filing post-sentence motions. Post-sentence motions were filed on March 21, 1996, and were heard and denied.   The sentence of life imprisonment on the murder bill was reimposed and a concurrent term of five to ten years' incarceration was imposed on the conspiracy bill.   This direct appeal followed.   We affirm.

¶ 2    Appellant asserts that he is entitled to a new trial because of prosecutorial misconduct and various incidents of alleged ineffectiveness of counsel.   Appellant further maintains that the trial court erred when it refused to permit him to change counsel prior to trial.

¶ 3    The relevant facts may be summarized as follows: On the night of March 11, 1989, Appellant was instructed by Melvin Troy Williams (Williams), his "employer," to call Melvin "Daddyo" Williams (the victim) at his home and inform him that Appellant would drive to his house and

---

1.   18 Pa.C.S.A. §§ 2502(a) and 903, respec-    tively.

pick him up. Williams believed that the victim had helped a rival gang kill "Taboo", who was a member of Williams' gang. N.T., 5/29/91, at 14. Evidence presented by the Commonwealth established that Appellant and Williams were allegedly involved in an illegal drug business where a hierarchy is in place and orders get handed down from the top. In accordance with this chain of command, Appellant asked Christopher Brown (Brown) to place the call. N.T., 5/28/91, at 99–100; 5/29/91, at 8–10. Appellant and Brown then picked up the victim and took him to a predetermined spot where Michael Black, Keith Washington, and Elliot Moore (the co-defendants) awaited his arrival. *Id.* At this spot, the victim was killed in the front seat of the car by the co-defendants' shower of gunfire.

¶ 4 Appellant first claims he is entitled to a new trial due to the allegedly intentional misconduct of the prosecutor during both the questioning of the witnesses and the prosecutor's summation to the jury regarding reference to gang signs, gang activity, guns, and illegal drugs. "The manner of cross-examination rests within the discretion of the trial judge and improper comments by a prosecutor require reversal only when the comments create a 'fixed bias or hostility' toward the defendant." *Commonwealth v. Edmiston*, 535 Pa. 210, 232, 634 A.2d 1078, 1089 (1993). The trial court must make the initial ruling on the prejudicial nature of a prosecutor's comments; this Court "is limited in its review to whether the trial court abused its discretion." *Commonwealth v. D'Amato*, 514 Pa. 471, 491, 526 A.2d 300, 310 (1987) (citation omitted). *Accord Commonwealth v. Rios*, 546 Pa. 271, 287, 684 A.2d 1025, 1033 (1996).

¶ 5 With this in mind, we address Appellant's contention that the Commonwealth improperly questioned Brown about photographs that depicted Brown holding a gun and making a sign with his hand in the company of the co-defendants.

N.T., 5/29/91, at 52. The prosecutor questioned Brown as follows:

Q. Now on the picture, on one of the pictures or on two of the pictures, you are making a sign. What is that sign? What is that sign, Mr. Brown?

A. It doesn't mean anything.

Q. Not a gang sign?

All Counsel: Objection.

The Court: Sustained. What is the sign?

N.T., 5/29/91, at 36. First, we note that defense counsel's objection was sustained, the witness did not answer and Appellant did not request relief at trial. Appellant did not claim that the trial court abused its discretion when it sustained Appellant's objection to the question. Moreover, he did not ask for a curative instruction or move for a mistrial; therefore, counsel must have been satisfied with the trial court's ruling. Appellant has thus failed to preserve this issue on appeal and has waived this claim. Pa. R.A.P. 302(a).

¶ 6 Second, even if Appellant had not waived this issue, the courts have recognized that evidence of gangs and gang membership is admissible. The Commonwealth may properly introduce the fact that the accused is a member of a gang to explain the conduct of a Commonwealth witness. *Commonwealth v. Whitfield*, 275 Pa.Super. 530, 419 A.2d 27 (1980). Evidence relating to gang membership may also be probative of the credibility of the prosecution's chief witness. *Id.* In *Whitfield*, the appellant, who was a member of a gang, and several other men were involved in a murder. An eyewitness immediately reported the crime to police but did not identify the appellant until some time later. The Commonwealth introduced evidence of appellant's gang membership to explain the witness's delay in reporting the crime. The witness feared that if he identified the appellant to the police, the gang would retaliate against him. *Id.* at 28–29. This Court held that the Commonwealth properly presented the evidence of gang

membership because it was probative of the credibility of the witness in explaining his reluctance to implicate appellant. *Id.* at 29.

■ ¶ 7 In the present case, we conclude that the Commonwealth properly introduced evidence of Brown's affiliation with a gang. Despite Brown's earlier signed statements and testimony under oath on three previous occasions, where he implicated Appellant's involvement in the murder, he took the stand in this trial and recanted his testimony, testifying that Appellant played no part in the murder. N.T., 5/29/91, at 67. In fact, Brown stated that his entire testimony at the preliminary hearings was a lie. N.T., 5/29/91, at 125. The Commonwealth then impeached him with his earlier statements. To do so, however, the Commonwealth needed to explain to the jury Brown's asserted reason for changing his testimony at trial, i.e. fear of gang retaliation. To establish his fear, the Commonwealth presented evidence that Appellant and the other co-defendants were members of a gang, and that the gang had already killed one of their own members. This type of questioning and evidence is clearly permissible. *Whitfield, supra.*

■ ¶ 8 Appellant also argues that the prosecutor acted improperly when he asked him about the Junior Black Mafia (JBM) and if he sold drugs. Specifically, Appellant objects to the following exchange:

Q. Do you know where [Williams] and the others keep their guns?

A. No, I would just see them with them at different times.

Q. Where does [Williams] get his guns and drugs from?

A. I couldn't tell you.

Q. Who did [Williams] work for?

A. I don't know. If I wanted a bundle of cocaine, I would buy it and sell it.

Q. Do you know anything about the JBM?

A. I never heard of that.

N.T., 5/30/91, at 111–12.

¶ 9 Initially, we note that Appellant denied knowing what the initials JBM stood for and they were not explained at trial. Our courts have held that the Commonwealth may introduce evidence of a gang in order to prove a conspiracy. *Commonwealth v. Gwaltney,* 497 Pa. 505, 514, 442 A.2d 236, 241 (1980). Since Appellant was charged with criminal conspiracy, evidence of the gang activity involved in the present case was highly probative of whether a conspiracy existed. Moreover, Appellant's culpability is based solely on his participation in the conspiracy. Evidence that Williams developed a plan to kill the victim, that he used members of his gang to execute that plan, and that all of the co-defendants were members of the gang, was probative evidence of the existence of a conspiracy. Therefore the Commonwealth's evidence of gang involvement was based on evidence properly introduced at trial and did not constitute prosecutorial misconduct.

■ ¶ 10 Appellant also argues that certain statements made during summation constitute prosecutorial misconduct. A prosecutor's comments "do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Gibson,* 547 Pa. 71, 94–95, 688 A.2d 1152, 1164, *cert. denied,* 522 U.S. 948, 118 S.Ct. 364, 139 L.Ed.2d 284 (1997). A prosecutor is permitted to vigorously argue his case as long as his comments are based upon the evidence or reasonable inferences therefrom or are mere oratorical flair. *Commonwealth v. Morales,* 549 Pa. 400, 423, 701 A.2d 516, 527–28 (1997). In assessing whether a prosecutor is guilty of misconduct during the presentation of his argument to the jury, "we must not lose sight of the fact that the trial is an adversary

proceeding, and the prosecution, like the defense, must be accorded reasonable latitude in fairly presenting its version of the case to the jury." *Commonwealth v. Rainey*, 540 Pa. 220, 235, 656 A.2d 1326, 1334 (citations omitted), *cert. denied*, 516 U.S. 1008, 116 S.Ct. 562, 133 L.Ed.2d 488 (1995).

¶ 11 The prosecutor used the words "squad," "hunting party," "drugs," "gang sign," "ghetto codes," and repeatedly used "gangster" while describing testimony that the jury had heard. N.T., 6/5/91, 72–82. Appellant believes that the prosecutor's use of these words was prejudicial. Appellant also contends that the following statement was prejudicial: "I submit to you ladies and gentlemen, in this country, there was once a time when [C]oke was [C]oke, a joint was a bad place to be, a Ford and a Chevy would last ten years. But those days are gone." *Id.* at 79. Trial counsel objected to all of these statements made by the prosecutor in his closing and asked the court for cautionary instructions. The trial court overruled these objections. *Id.* at 92.

¶ 12 The trial court was correct. After review, we conclude that the statements regarding drugs and gangs were reasonable inferences from the evidence admitted at trial and, therefore, the prosecutor was permitted to use them. *Whitfield, supra.* It is obvious from the context in which the prosecutor made these statements that his sole intention was to provide the jury with a description of the incident, and we find that these comments fall within the bounds of oratorical flair. *Morales, supra.* The prosecutor's comments were not designed to bias the jury against Appellant based solely on fact that he was a member of a gang. Accordingly, this issue is without merit.

¶ 13 Appellant asserts that the enumerated instances of alleged misconduct must be assessed in the aggregate. Since, as the discussion above shows, none of the Appellant's individual attacks on the prosecutor has any merit, viewing them in the aggregate cannot enhance his quest for relief; the aggregation of meritless claims does not imbue them with merit. *Commonwealth v. McGill*, 545 Pa. 180, 189, 680 A.2d 1131, 1136 (1996), *cert. denied*, 519 U.S. 1152, 117 S.Ct. 1087, 137 L.Ed.2d 221 (1997) (no number of meritless claims collectively attain merit); *Commonwealth v. Rivers*, 537 Pa. 394, 410, 644 A.2d 710, 718 (1994), *cert. denied*, 516 U.S. 1175, 116 S.Ct. 1270, 134 L.Ed.2d 217 (1996) (where individual misconduct claims are without merit, allegation of cumulative misconduct also fails).[2]

¶ 14 Appellant next asserts that due to trial counsel's ineffectiveness, he should be granted a new trial. The standard for determining the effectiveness of counsel is well settled. Counsel will be deemed ineffective where: (1) there is arguable merit to the underlying claim, (2) the course chosen by counsel does not have a reasonable basis designed to effectuate the defendant's interest, and (3) the defendant demonstrates prejudice. *Commonwealth v. Carter*, 443 Pa.Super. 231, 661 A.2d 390, 395 (1995). The burden of establishing ineffective assistance of counsel rests on the appellant because counsel's representation is presumed to be effective. *Commonwealth v. Roberts*, 545 Pa. 460, 465, 681 A.2d 1274, 1276 (1996).

¶ 15 Appellant first submits that Brown should not have been permitted to

---

2. Appellant also alleges that the circumstances indicate that the prosecutor's improper behavior was deliberate and Appellant cited *Commonwealth v. Brown*, 489 Pa. 285, 414 A.2d 70 (1980) (stating deliberate attempts by the prosecutor to destroy the objectivity and impartiality of the finder of fact so as to cause the verdict to be the product of the emotions rather than reflective judgment will not be tolerated). This issue is waived because Appellant failed to further develop this argument. "This Court will not make appellant's arguments for him." Pa. R.A.P. 2119(a), *Commonwealth v. LaCava*, 542 Pa. 160, 180, 666 A.2d 221, 235 (1995).

testify at trial and/or his testimony should have been stricken because the Commonwealth knew it was offering perjured testimony. Appellant asserts that the Commonwealth improperly impeached its own witness, Brown, and argues that the Commonwealth knew previous to trial that Brown had recanted his original statement to the police and his testimony at the preliminary hearing. The Appellant concludes that the Commonwealth could not have been surprised by Brown's testimony, therefore, it should not have impeached its own witness. Additionally, Appellant claims that the Commonwealth improperly used Brown's trial testimony to suggest that the Appellant was responsible for Brown's recantation. Finally, Appellant contends that trial counsel was ineffective when he failed to raise the issue at trial.

■ ¶ 16 In reviewing this issue, we rely on the appropriate case law as laid out by the trial court:

Pennsylvania law clearly allows a witness to testify even though the witness made a prior inconsistent statement if it is relevant to impeach the trial testimony of that witness. *Commonwealth v. Lawson*, 437 Pa. [Super.] 521, [528], 650 A.2d 876, 879 (1994). "Surprise" is not a necessary requirement to admit prior inconsistent testimony "when it is believed that the interests of truth and justice so require." *Commonwealth v. Brady*, 510 Pa. 123, [134], 507 A.2d 66, 72 (1986) citing *Commonwealth v. Waller*, 498 Pa. 33, 39, 444 A.2d 653, 656–57 (1982) (the court held that a tape recorded statement given to police which later was recanted in an affidavit was admissible to impeach the witness at trial; *Commonwealth v. Gee*, 467 Pa. 123, [136–37] 354 A.2d 875, 881 (1976)). It is left to the discretion of the trial court to make the determination wheth-

er a witness can be impeached with a prior inconsistent statement, and will be reversed only if there is an abuse of discretion. *Brady*, [510 Pa. at 135] 507 A.2d at 72; *Commonwealth v. Grimes*, 436 Pa.Super. 535, [545] 648 A.2d 538, 543 (1994); *Lawson*, 650 A.2d at 879.

Prior inconsistent statements may also be used for substantive evidence. *Commonwealth v. Lively*, 530 Pa. 464, [470] 610 A.2d 7, 10 (1992); *Brady*, [510 Pa. at 133] 507 A.2d at 71. To be used, the prior statement must have been given under oath under a formal legal proceeding, when [the] statement had been written and signed by the witness, and when the statement is [a] contemporaneous recording of a witness' statements in order to establish the reliability of the prior statement. *Lively*, [530 Pa. at 471] 610 A.2d at 10.

Trial Court Opinion, 8/3/98, at 6–7.

■ ¶ 17 In the present case, Brown made his first statements to police on March 17, 1989, when he was originally questioned in regard to the death of the victim. In May of that year, Brown testified at the preliminary hearing. In both, Brown admitted his knowledge of the shooting death of the victim, his involvement in the death, and Appellant's participation. On June 1, 1989, Brown gave a statement recanting the statement he made to detectives and his preliminary hearing testimony, and said that Larry Dixon, another co-defendant, was not the person he saw on the night of the shooting. N.T., 5/29/91, at 60. In November, Brown recanted his original statement and testimony in an affidavit claiming that Appellant had no involvement in the victim's death.[3] The Commonwealth was attempting to use Brown's prior inconsistent statement as substantive evidence. Therefore,

---

**3.** We note that the trial court opinion states that in June, Brown recanted his original statement and testimony. We do not find this supported by the record. Also, the record does not support the trial court's claim that Brown, in another statement to police, stated that the recantation was prepared by Appellant, and he was forced to sign under threats from Appellant while both were incarcerated at the same place. The record shows that Brown was threatened by a different co-defendant.

it was necessary for the Commonwealth to both impeach Brown's trial testimony and to demonstrate the reliability of Brown's original statement. In doing so, it was essential that the prosecution show the circumstances surrounding Brown's testimony at the trial was false and his original police statement was reliable. Under these circumstances, the Commonwealth properly impeached Brown's trial testimony. Additionally, the Commonwealth properly offered evidence of the reliability of Brown's original statement so it could be used as substantive evidence. Since the testimony was properly admitted, trial counsel will not be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Rainey*, 540 Pa. 220, 235, 656 A.2d 1326, 1334 (1995).

¶ 18 Next, Appellant submits that the introduction of and testimony concerning the two group photographs which suggest that he was in a gang was irrelevant and prejudicial. Consequently, he suggests that trial counsel should have objected to these photographs. In one photograph, Appellant allegedly possesses a 9mm weapon. N.T., 5/28/91, at 38. In both photographs, Brown is supposedly giving a gang sign. N.T., 5/29/91, at 36–37.

¶ 19 The trial court controls the admissibility of evidence such as photographs, and a court's decision to admit a certain piece of evidence will not be reversed absent an abuse of discretion. *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221 (1995); *Commonwealth v. Stein*, 378 Pa.Super. 339, 548 A.2d 1230, 1233 (1988). In addition, where, as here, photographs are not inflammatory, they are admissible "provided that they are relevant and can assist the jury in understanding the facts." *Commonwealth v. Gorby*, 527 Pa. 98, 111, 588 A.2d 902, 908 (1991). "Evidence is considered relevant if it logically tends to establish a material fact in the case, tends to make the fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *LaCava, supra*. Appellant argues that the photographs were irrelevant because the association between and among the co-defendants was not an issue and, therefore, he was prejudiced by references to gang activity. We note that Appellant was charged with murder and conspiracy. Our Supreme Court has repeatedly held, as stated *infra*, that pictures showing conspirators together provide circumstantial evidence of the existence of a conspiracy. *Commonwealth v. Pelzer*, 531 Pa. 235, 243–44, 612 A.2d 407, 412 (1992). Moreover, this Court has held that the introduction of a photograph of an appellant in possession of a gun "similar" to a gun used in a robbery was clearly relevant and properly admitted by the trial court. *Commonwealth v. Lark*, 316 Pa.Super. 240, 462 A.2d 1329, 1337–38 (1983), *aff'd*, 505 Pa. 126, 477 A.2d 857 (1984). Plainly, the photographs provided substantial evidence tending to prove that Appellant and his conspirators possessed the guns to kill the victim, making the photographs both relevant and admissible.

¶ 20 Appellant argues that even if the photographs were relevant, any probative value is outweighed by the prejudice they caused by making him appear to be a gang member. As stated above, the evidence of Appellant's gang affiliation was properly introduced by the Commonwealth to prove the crime of conspiracy. Thus, because the photographs directly related to an issue at hand, we conclude that any prejudice suffered as a result of their introduction at trial is outweighed by their probative value. Accordingly, as the underlying claim in this issue is without merit, trial counsel cannot be deemed ineffective on this basis.

¶ 21 Appellant also claims that counsel was ineffective for failing to object to the following line of questioning during Brown's direct examination because this testimony would cause the jury to conclude that Appellant must be a "dangerous indi-

vidual possessing a lengthy criminal record." Appellant's Brief at 36.

Q. How long were you at Delaware County?

A. I believe about three weeks, maybe.

Q. How long?

A. Three or four weeks.

* * *

Q. And you were there. Tell the ladies and gentlemen of the jury who else was there, at the time you were there, who is here on trial today?

[Counsel for co-defendant]. Objection.

A. [The Witness] Which jail?

Q. [By the prosecution] Delaware County?

A. [Appellant.]

N.T., 5/29/91, at 71.

¶ 22 As stated above, Brown recanted his prior statements that implicated Appellant at trial. In order to impeach Brown's trial testimony and establish the reliability of his prior statements, the Commonwealth had to offer the jury an explanation as to why Brown had changed his story. The above testimony was intended to show that Appellant had access to Brown when the two were incarcerated together. This access would show the possibility of Brown being threatened or coerced by Appellant to change his testimony.

¶ 23 The trial court decided this issue as follows:

Under Pennsylvania law, evidence showing bias, corruption, or interest of a witness is admissible to prove that a witness has motive to testify falsely. Accordingly, "evidence regarding possible threats made by the [Appellant] against a witness is relevant when it is introduced for the purpose of explaining testimony which is inconsistent with an earlier pre-trial statement." *Commonwealth v. Stein*, 378 Pa.Super. 339, 548 A.2d 1230, 1234 (1988) (such evidence was found to be admissible where prosecutor in an effort to show motive for witness's recantation, questioned witness as to defendant's incarceration and possible access defendant had to witness); *Commonwealth v. Bryant*, 316 Pa.Super. 46, 462 A.2d 785, 788 (1983).

* * *

Additionally, there was no suggestion in the direct examination of Brown that [Appellant] had a prior criminal record. [Appellant] was in jail at that time because he was unable to produce bail for the offense for which he was on trial. Therefore, it is mere speculation that the jury would conclude that [Appellant] has a previous criminal conviction. Furthermore, the probative value of Brown's testimony concerning defendant's incarceration outweighs any prejudicial effect.

Trial Court Opinion, 8/3/98, at 9–11 (footnote omitted). We agree with this analysis. Accordingly, we conclude that Appellant's claim has no merit.

■ ¶ 24 Appellant further asserts that references made throughout the trial to other homicides were prejudicial to him because they conveyed the impression that he was involved in the other homicides as well. Appellant believes that trial counsel was ineffective when he failed to object to these references. Specifically, he objects to the statement prepared by Brown that the prosecutor used to impeach Brown. The prosecutor altered the statement of Brown, which would have read, "I am saying that Keith *had no knowledge of the crimes* at all," to, "*had no knowledge of the crime, singular,*" so that it did not imply that Appellant had participated in more than one crime. *See* N.T., 5/29/91, at 66. Appellant's counsel objected to this and requested a mistrial, which the trial court denied. *Id.* at 67. Appellant argues that there were other numerous statements made by the prosecutor during Brown's direct examination about the three murders of which Brown was convicted. Appellant believes these had a prejudicial

effect on him and counsel's failure to object was improper.

¶ 25 We note that, during the charge to the jury, the trial judge gave the following instruction concerning Brown's testimony:

> Christopher Brown testified that he had pled guilty to three murders including the murder of Melvin "Daddyo" Williams.
>
> In considering his testimony, you must consider only what he said about the murder of Melvin "Daddyo" Williams inasmuch as the defendants here are charged only with that one murder and no other.

N.T., 6/5/91, at 115. This instruction by the court that the jury only consider the murder of the victim (Melvin "Daddyo" Williams) and also the clarification by the court that they only consider the five charges as they relate to the night of March 11, 1989, eliminated any possible prejudice from evidence of other crimes. *See Commonwealth v. Jones*, 542 Pa. 464, 491, 668 A.2d 491, 504 (1995) (stating any prejudicial effect from a limited reference to alleged prior criminal activity is cured by the trial court's instructions). Further, if there is any prejudicial effect caused by this limited reference, it was outweighed by the probative value of such testimony impeaching Brown. Therefore, Appellant's claim has no merit.

¶ 26 In his final ineffectiveness claim, Appellant argues that Brown's November 4, 1989, statement would have provided support for Appellant's contention at trial that he was unaware of his alleged co-conspirator's lethal intent. Appellant contends that this statement was exculpatory and maintains that trial counsel could have no reasonable basis for failing to cross-examine Brown with this statement.

¶ 27 In reviewing this issue, we again rely on the trial court's opinion, which stated:

> The November 1989 statement contradicts Brown's trial testimony, thereby offering a third version of the March 11, 1989 events. With three versions of the same story Brown's credibility would have been dealt a harmful blow. This would have greatly weakened any reliance defense counsel placed in Brown's trial testimony that he counted on to support [Appellant's] contention that he did not know about the conspiracy. Therefore, [Appellant's] claim is rejected. It is clear that counsel had a reasonable basis in pursuing a strategy of not using Brown's statement dated November 4, 1989.

Trial Court Opinion, 8/3/98, at 13. Because trial counsel had a reasonable basis for not cross-examining Brown regarding the statement, and because this strategy was designed to effectuate Appellant's interest, counsel cannot be deemed ineffective. *Carter*, 661 A.2d at 395.

¶ 28 The last issue Appellant raises is that the trial court erred when it refused to permit him to change counsel prior to trial. Appellant was arrested in 1989 and, over the next two years, trial counsel repeatedly delayed trial by requesting ten continuances. During the hearing on the motion to suppress held on May 16, 1991, the trial court was informed of Appellant's desire to change counsel. N.T., 5/17/91, at 122–23. The trial court denied this request.

¶ 29 The trial court has discretion to decide whether a delay is warranted in order to allow an accused to change attorneys, and this Court will not overturn the trial court's decision absent an abuse of that discretion. *Commonwealth v. Warden*, 335 Pa.Super. 315, 484 A.2d 151, 152 (1984). In determining whether a request to change counsel should be granted, the trial court must weigh and balance a defendant's right to the counsel of his choice against the public's need for the efficient and effective administration of criminal justice. *Warden*, 484 A.2d at 152. In this case, there were three co-defendants who were also delayed by Appellant's first ten continu-

ances. We conclude that any further delay, for example, by allowing Appellant to retain new counsel, would not have led to the efficient or effective administration of justice. Appellant maintains that counsel had expressed a willingness to help new counsel prepare over that weekend for his trial and that no postponement of trial would have been necessary. However, it is doubtful that counsel would have been able to thoroughly prepare in one weekend for a trial that had forty-two witnesses and eighty-nine exhibits.

¶ 30 The trial court recognized that a new attorney coming into trial at that time would be unable to render effective assistance of counsel unless the trial was delayed to allow him time to prepare. Moreover, another delay in the trial would not be efficient or effective justice for the other co-defendants whose trial would also be delayed. Therefore, we conclude that the trial court did not abuse its discretion with the denial of Appellant's request for new counsel.

¶ 31 Judgment of sentence affirmed.