## In the Interest of I.A.

450

C.P. of Lebanon County, no. 2001-30011.

*Eleanor O'Donnell,* for the Commonwealth.
*Megan Ryland-Tanner,* for I.A.

CHARLES, *J.,* May 11, 2004—Before us is an evidentiary issue upon which the outcome of the above-referenced juvenile will rest. We must decide if a prior statement of a witness who recants at trial can be admitted as substantive evidence. Our decision regarding this

issue was recently complicated by the United States Supreme Court, which injected constitutional considerations into what had previously been purely an evidentiary analysis. After reciting the factual background of this case, we will undertake an analysis of the issue from an evidence perspective and will follow that analysis with a discussion of federal constitutional principles.

## I. FACTUAL BACKGROUND

On February 2, 2004, I.A.[1] was charged with robbery. On March 16, 2004, we conducted a contested hearing regarding the robbery charge. The dispute before us arose in the context of our denial of I.A.'s motion for judgment of acquittal.

At the hearing, the Commonwealth presented testimony from R.G., who was the victim of a robbery. R.G. testified that three young men on bicycles accosted him. During the course of the attack, the young men stole $20 from R.G. R.G. described each of his assailants as being of Hispanic origin. However, he could not identify any of the three and was specifically unable to provide a courtroom identification of I.A.

The Commonwealth also called A.M. as a witness. A.M. stated that he was riding his bicycle with I.A. and two other boys. He stated that the handlebars of I.A. inadvertently struck the victim. However, he disavowed any knowledge of further involvement by I.A. in the robbery. He specifically denied that I.A. hit the victim or participated as an accomplice in stealing the victim's cash.

---

1. To protect confidentiality of those involved, we will refer to all by their initials.

Following the above testimony, the Commonwealth sought and was granted permission to cross-examine A.M. On cross-examination, A.M. was confronted by a statement he had previously made on January 30, 2004 at a contested hearing for one of I.A.'s co-conspirators. In that prior statement, A.M. testified under oath that I.A. "fought" with the victim and that I.A. received one-third of the proceeds garnered from this robbery.

We considered the prior statement of A.M. as substantive evidence of I.A.'s guilt. As a result, we found I.A. guilty of robbery. However, we acknowledged that without A.M.'s prior statement, we would not have had sufficient evidence to find I.A. guilty of robbery.

During the contested hearing, we did not have ample opportunity to conduct the legal research that this issue necessitated. Therefore, we suggested to the parties that disposition over I.A. be deferred until both sides had the opportunity to fully brief the issue. Both the Commonwealth and I.A. agreed with our suggestion. Therefore, a disposition hearing was continued. Both sides filed briefs on April 19, 2004. We write this opinion to resolve the issue now before us.

## II. PENNSYLVANIA EVIDENCE LAW

The witness who recants has long presented a dilemma for courts. Without question, a witness who changes his story can be confronted with, and impeached by, a prior inconsistent statement. The more thorny question is whether the prior statement can be considered as substantive evidence of guilt. This question is squarely before us, as the Commonwealth's case would not have

survived a motion for judgment of acquittal without A.M.'s prior statement.

Fortunately, we can receive guidance from an evolving body of Pennsylvania case law that began with the case of *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986). In *Brady*, the Supreme Court held that prior inconsistent statements of a non-party witness may be used as substantive evidence. While acknowledging the traditional view that such statements were hearsay, the court nonetheless concluded that because the witness would testify under oath and be subject to cross-examination, the traditionally-recognized dangers of hearsay would be non-existent. *Id.* at 128-29, 507 A.2d at 69.

The Supreme Court was again confronted with this issue in 1992. In *Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7 (1992), the Supreme Court amplified its *Brady* ruling by requiring that "additional requirements of reliability" be established before a prior inconsistent statement can be offered as substantive evidence. *Id.* at 470, 610 A.2d at 9-10. Thus, the Supreme Court established a two-part test: (1) whether the statement is given under reliable circumstances; and (2) whether the declarant is available for cross-examination. The Supreme Court explained its decision as follows:

"In an effort to ensure that only those hearsay declarations that are demonstrably reliable and trustworthy are considered as substantive evidence, we now hold that a prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or

a statement that is a contemporaneous verbatim recording of the witness' statements." *Id.* at 471, 610 A.2d at 10.

The Supreme Court's so-called *Brady-Lively* rule has been applied on several occasions by the Pennsylvania Superior Court. In *Commonwealth v. Brewington,* 740 A.2d 247 (Pa. Super. 1999), a prosecutor called a witness knowing that he had recanted his earlier statement. Despite this lack of surprise, the trial court permitted the Commonwealth to cross-examine the witness using his prior inconsistent statement. The Superior Court affirmed the trial court's ruling and stated that prior inconsistent statements can be used for substantive purposes even in absence of surprise to the prosecutor.

More recently, in *Commonwealth v. Carmody,* 799 A.2d 143 (Pa. Super. 2002), the defendant's girlfriend provided a detailed statement to police that explained how the defendant beat her and threatened to kill her while holding a knife to her throat. When called upon to testify, the victim denied that the defendant assaulted her and asked that charges be dismissed. She claimed that her initial statement to police was inaccurate "due to an alcohol-induced blackout." The trial court convicted defendant based largely upon the victim's initial statement to police. The Superior Court affirmed the defendant's conviction and the use of the victim's prior statement as substantive evidence.

The similarities between this case and *Carmody* are compelling. In both cases, the only eyewitness to the crime recanted. In each case, the Commonwealth's prima facie case was dependent upon the witness' prior inconsistent statement. In *Carmody,* the Superior Court sanc-

tioned use of that prior inconsistent statement as substantive evidence. We will do likewise.

The facts of this case fall squarely within the *Brady-Lively* rule. In this case, the recanting witness' prior statement was made under oath at a prior judicial proceeding. By the express language of the Supreme Court in *Lively,* this satisfies the first prong of the two-part *Brady-Lively* test. With respect to the second prong, A.M. was present and subject to cross-examination. Accordingly, the second part of the *Brady-Lively* test was also met. Because the *Brady-Lively* test has been met in this case, Pennsylvania law permits us to consider A.M.'s statement as substantive evidence.

## III. CONFRONTATION CLAUSE

Our decision in this case was recently complicated by the United State Supreme Court. On March 8, 2004, our nation's highest court decided the case of *Crawford v. Washington,* 124 S.Ct. 1354 (2004). *Crawford* involved the rules of evidence and the confrontation clause of the United States Constitution.[2] Under the facts presented to it, the Supreme Court held that a defendant's constitutional right to confront his accusers trumps inconsistent rules of evidence: "Where testimonial statements are involved, we do not think the framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence . . . ." *Id.* at 1370. Thus, the Supreme Court held that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant

---

2. The so-called "confrontation clause" affords a criminal defendant with the right to confront the witnesses against him in open court. See U.S. Constitutional Amendment VI.

is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 1369.[3]

The ink used to print *Crawford* was hardly dry before a firestorm of criticism erupted. Most of the criticism was directed to the following passage found near the end of the majority opinion:

"Where nontestimonial hearsay is at issue, it is wholly consistent with the framer's design to afford the states flexibility in their development of hearsay law—as does *Roberts,* and as would an approach that exempted such statements from confrontation clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of 'testimonial.' " *Id.* at 1374.

Most criticism mirrored remarks of Chief Justice Reinquist in his *Crawford* dissent:

"The court grandly declares that '[w]e leave for another day any effort to spell out a comprehensive definition of "testimonial," ' *ante,* at 1374. But the thousands of federal prosecutors and the tens of thousands of state prosecutors need answers as to what beyond the specific kinds of 'testimony' the court lists, see *ibid.,* is covered by the new rule. They need them now, not months or years from now. Rules of criminal evidence are applied every day in courts throughout the country, and parties should not be left in the dark in this manner." *Id.* at 1378.

Given the vagaries of *Crawford,* we suspect that the Sixth Amendment's confrontation clause will become an

---

3. Without question, the statement of A.M. in this case would be considered "testimonial" in nature.

implement affixed prominently to the tool belts of defense attorneys who seek to challenge admission of hearsay. On the other hand, prosecutors will no doubt urge a restrictive interpretation of *Crawford* limited to the facts of that case.

While the language of *Crawford* does not lend itself to a fact-specific interpretation, neither should *Crawford* be used as a sweeping disavowal of all hearsay in criminal cases.[4] We chose an interpretation of *Crawford* that encompasses its purpose as well as its context.

*Crawford's* purpose was to preclude the type of potential abuse that could arise without a defendant's ability to confront and cross-examine witnesses. The framers of our constitution recalled and abhorred the "star chamber" type of process in Europe where accused persons were convicted based upon absent and sometimes even unnamed accusers. Our founding fathers designed the Sixth Amendment to insure that every defendant could look his/her accusers in the eye and test their testimony via cross-examination. As we see it, confrontation and cross-examination are the pillars upon which the Sixth Amendment and *Crawford* were built.

*Crawford's* context is provided by a series of United States Supreme Court decisions that address the interplay between hearsay and the Sixth Amendment. These decisions draw a distinction between hearsay from an absent witness and prior testimony of one who is present in court. See *e.g., Kentucky v. Stincer,* 107 S.Ct. 2658

---

4. In fact, the majority in *Crawford* felt that it was important to mention that hearsay exceptions such as the ones founded upon business records and dying declarations are to be considered as unaffected by the *Crawford* ruling.

(U.S. 1987). In fact, two United States Supreme Court decisions recognized this distinction as having critical Sixth Amendment import.

In *California v. Green,* 399 U.S. 149 (1970), the court held that the confrontation clause was not violated by admitting a declarant's inconsistent out-of-court statement as long as the declarant is testifying as a witness and subject to full cross-examination at the trial itself. See *id.* at 164. The court specifically noted: "For where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem." *Id.* at 162.

Even more important is the case of *U.S. v. Owens,* 484 U.S. 554 (1988). In *Owens,* the court specifically eschewed the hearsay analysis that had been used in *Ohio v. Roberts,* 448 U.S. 56 (1980), stating: "We do not think such an inquiry [under *Roberts*] is called for when a hearsay declarant is present at trial and subject to unrestricted cross-examination." *Id.* at 560. This statement is of critical import to us, as *Crawford* specifically overruled the *Roberts'* "indicia of reliability" analysis that *Owens* says is not applicable when the witness testifies at trial. If there was any doubt about this interpretation, it can be put to rest by the following passage in *Owens*:

"In that situation [where the hearsay declarant is present at trial and subject to cross-examination], as the court recognized in *[Commonwealth v. Green],* the traditional protections of the oath, cross-examination and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements. We do not think that a constitutional line drawn by the confrontation

clause falls between a forgetful witness' live testimony that he once believed this defendant to be the perpetrator of the crime, and the introduction of the witness' earlier statement to that effect." *Id.* at 560. (citations omitted)

As we view the purpose and the context of *Crawford,* we do not find it to present any impediment to the introduction of A.M.'s prior statement as substantive evidence. In this case, I.A. was present to observe A.M.'s testimony. I.A.'s attorney had the opportunity to fully explore A.M.'s prior statement and his explanation for its inconsistency with trial testimony. Under these circumstances where confrontation and cross-examination were scrupulously protected, *Crawford* does not apply.

## IV. CONCLUSION

Based upon *Brady* and *Lively,* we conclude that Pennsylvania evidence law would permit introduction of A.M.'s prior statement as substantive evidence. Moreover, our careful review of *Crawford* leads us to conclude that there are no Sixth Amendment prohibitions that would forbid us from considering A.M.'s prior testimony. Accordingly, A.M.'s prior inconsistent statement was properly considered as substantive evidence and the finding of guilt based thereon should not be disturbed.

## ORDER

And now, May 11, 2004, upon consideration of the evidence adduced at the contested hearing and the briefs of the parties, the defendant's motion for judgment of acquittal is respectfully denied. The district attorney's office is directed to list this matter for disposition as promptly as possible.