J-S17008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOSEPH BRUNNER, | |
| Appellant | No. 806 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 21, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003741-2015

BEFORE: BENDER, P.J.E., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 05, 2019**

Appellant, Joseph Brunner, appeals *nunc pro tunc* from the judgment of sentence of an aggregate term of 12-25 years' incarceration, followed by 10 years' probation, imposed after he was convicted of aggravated assault and numerous other offenses. We affirm.

The trial court summarized the procedural and factual history of this case as follows:

**PROCEDURAL HISTORY**

> On November 19, 2014, [Appellant] was arrested and charged with, *inter alia*, [a]ggravated [a]ssault, [c]onspiracy to [c]ommit [r]obbery, [p]ossessing an [i]nstrument of [c]rime, [r]obbery, and [b]urglary. [Appellant's] waiver trial took place on April 14, 2016, resulting in [Appellant's] conviction on the stated charges. On July 21, 2016, [Appellant] was sentenced to an aggregate sentence of 12-25 years['] state incarceration followed by 10 years of probation.

On August 2, 2016, [Appellant] filed his [n]otice of [a]ppeal to the Superior Court. On August 15, 2016, the [c]ourt filed and served on [Appellant] an [o]rder pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, directing [Appellant] to file and serve a [s]tatement of [e]rrors [c]omplained of on [a]ppeal within 21 days of the [c]ourt's [o]rder. On October 31, 2016, [Appellant's] appeal was dismissed for failure to comply with Pa.R.A.P. 3517.[1]

On February 3, 2017, [Appellant] filed a Post[]Conviction Relief Act [(PCRA), 42 Pa.C.S. §§ 9541-9546,] petition. On October 12, 2017, [Appellant] filed an amended PCRA petition. On March 13, 2018, the [c]ourt reinstated [Appellant's] appeal rights by agreement of counsel. On March 15, 2018, [Appellant] filed his [n]otice of [a]ppeal to the Superior Court. On April 23, 2018, Stephen Thomas O'Hanlon was appointed as defense counsel. On June 1, 2018, the [c]ourt filed and served on [Appellant] an [o]rder pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, directing [Appellant] to file and serve a [s]tatement of [e]rrors [c]omplained of on [a]ppeal within 21 days of the [c]ourt's [o]rder. On June 17, 2017, [Appellant] filed his statement of matters complained of on appeal….

**EVIDENCE AT TRIAL**

At trial, Ms. Bonita Yates testified that[,] on November 14, 2014, she was 52 years old and lived at 546 South 52nd Street[] in West Philadelphia, Pennsylvania. On the evening of November 13, 2014, Ms. Yates was at home with John Cox, drinking alcohol while she was on multiple medications for her bipolar [disorder and] schizophrenia. Ms. Yates repeatedly testified that she has no memory of the events that led to the immediate complaint because she blacked out as a result of her drug and alcohol consumption. Ms. Yates does not remember seeing [Appellant] nor having the police come to her home in the early hours of November 14.

---

[1] Pa.R.A.P. 3517 ("Whenever a notice of appeal to the Superior Court is filed, the Prothonotary shall send a docketing statement form which shall be completed and returned within ten (10) days in order that the Court shall be able to more efficiently and expeditiously administer the scheduling of argument and submission of cases on appeal. Failure to file a docketing statement may result in dismissal of the appeal.").

Ms. Yates testified that she does not remember giving a statement to police at 6:15 A.M. on November 14, 2014[,] at Southwest Detectives, located at 55th and Pine Street[] in Philadelphia. Because Ms. Yates testified that she does not remember giving any statement to police, her statement was read into the record as a prior inconsistent statement. Ms. Yates'[s] statement details how [Appellant], an old friend of Ms. Yates, came to her home with an accomplice and tried to rob her. Ms. Yates'[s] statement alleged that [Appellant] forced open Ms. Yates'[s] door and his accomplice shot Mr. Cox in the arm. The written statement included Ms. Yates'[s] name, date of birth, and her handwritten signature at the bottom, which Ms. Yates acknowledged as authentic. Ms. Yates testified that she attended a preliminary hearing on April 9, 2015, where she also testified that she did not remember anything from the night in question.

Detective Mary Kuchinsky testified that Ms. Yates came in to give a statement around 6 A.M. on November 14, 2014. The detective testified, "I ask them, and from my observations, if somebody's intoxicated or under the influence of drugs, I would never take an interview from them." Detective Kuchinsky testified that Ms. Yates was coherent and did not appear to be sedated or on medication at the time of the interview. Detective Kuchinsky identified Ms. Yates'[s] statement detailing the robbery and shooting by [Appellant] and his accomplice, which she had recorded. Detective Kuchinsky testified that Ms. Yates did[ not] read very well, so she read the statement back to Ms. Yates, who confirmed the accuracy of the statement at the time it was made.

Philadelphia Police Officer Jacob Hollis testified that he received a radio call for a shooting at 546 South 52nd Street around 4:45 A.M. on November 14, 2014. Officer Hollis testified that[,] when he arrived at the scene[,] he saw that John Cox was shot in the right elbow, and that there was blood on the apartment door from Mr. Cox's wound. Officer Hollis testified, "The door frame looked like it was forced open." Philadelphia Detective Dennis Slobodian then testified that he went to the hospital and met with Mr. Cox who was being treated for a gunshot wound. Detective Slobodian also went to Ms. Yates'[s] home and discovered a bullet hole through the rear door.

Trial Court Opinion (TCO), 11/6/2018, at 1-4 (internal citations and footnotes omitted).

Presently, Appellant raises a single issue for our review:

Did the trial court err in overruling Appellant's counsel's objection and allowing the Commonwealth to read into the [r]ecord Bonita Yates'[s] statement when the [c]ourt made an assessment as to Ms. Yates'[s] lack of memory, when Ms. Yates should not have been subject to **Brady/Lively**[2] impeachment as a result, and when Appellant suffered irreparable harm when the statement was read in because Appellant was unable to properly confront this key witness?

Appellant's Brief at 4.

We acknowledge the following:

Our courts long have permitted non-party witnesses to be cross-examined on prior statements they have made when those statements contradict their in-court testimony. Such statements, known as prior inconsistent statements, are admissible for impeachment purposes. **Brady**, … 507 A.2d [at] 68 …; P[a].R.E. 613(a). Further, a prior inconsistent statement may be offered not only to impeach a witness, but also as substantive evidence if it meets additional requirements of reliability. **Lively**, … 610 A.2d [at] 9-10…; P[a].R.E. 803.1.[3] The test is a two-part inquiry: 1) whether the statement is given under reliable circumstances; and 2) whether the declarant is available for cross-examination. **Commonwealth v. Brewington**, 740 A.2d 247, 254 (Pa. Super. 1999), *appeal denied*, … 758 A.2d 660 ([Pa.] 2000). With respect to the first prong, that the statement is given under reliable circumstances, our [S]upreme [C]ourt has deemed reliable only certain statements; among them is a statement that is "reduced to a writing and signed and adopted by the witness." **Lively**, … 610 A.2d at 10. **See also** P[a].R.E. 803.1(1). With respect to the second prong, cross-examination, the inconsistent statement itself must be the subject of the cross-examination in order to satisfy the test. **Commonwealth v. Romero**, … 722 A.2d 1014,

---

[2] **Commonwealth v. Lively**, 610 A.2d 7 (Pa. 1992); **Commonwealth v. Brady**, 507 A.2d 66 (Pa. 1986).

[3] The official comment to Pa.R.E. 803.1(1) sets forth that the rule "is consistent with prior Pennsylvania case law[,]" specifically naming **Brady** and **Lively**. Comment to Pa.R.E. 803.1(1).

- 4 -

1017 ([Pa.] 1999), *cert. denied*, 528 U.S. 952, 120 S.Ct. 376, 145 L.Ed.2d 293 (1999).[3]

> [3] In **Romero**, our [S]upreme [C]ourt held that the cross-examination prong was not satisfied because the witness in that case, Barbosa, refused to answer any questions about his prior statement and was held in contempt of court as a result. The **Romero** [C]ourt found Barbosa's refusal to explain the statement foreclosed the defendant's right to confront witnesses against him….

**Commonwealth v. Carmody**, 799 A.2d 143, 148 (Pa. Super. 2002).

Here, the trial court concluded that Ms. Yates's statement satisfied the above-stated, two-prong test. It reasoned:

> At trial, Ms. Yates testified [that] she couldn't remember giving the statement to police, making her testimony inconsistent with the prior [statement] to police. Her inconsistent statement is admissible as substantive evidence because it meets the reliability and cross-examination requirements. As to the first prong of the test, Ms. Yates'[s] statement is reliable because it was voluntarily given and recorded by a Philadelphia detective, who credibly testified to the legitimacy of the statement. Ms. Yates adopted that statement at the time she made it by affixing her signature to the bottom. Further, the content of Ms. Yates'[s] statement, such as Appellant's forced entry and shooting, is corroborated by the testimony of the officers who investigated the scene of the crime. Likewise, as to the second prong, the declarant's availability for cross-examination, Ms. Yates was available for cross-examination. At trial, Ms. Yates was examined on direct about the contents of her statement and defense counsel was afforded an opportunity to cross-examine her. Ms. Yates['s] statement was therefore admissible as substantive evidence under the **Brady/Lively** rule.

TCO at 5-6.

Appellant, however, argues that Ms. Yates's statement could not be used as substantive evidence because "there was a ruling that [she] was credible when she testified that she did not remember the underlying facts and her

statement to police." Appellant's Brief at 11 (referring to N.T. Trial, 4/14/2016, at 81-82). Thus, Appellant says Ms. Yates "could not be properly subjected to **Brady/Lively** impeachment because there was never a judicial determination that [she] was not being frank or truthful. In fact, … there was a determination that [Ms. Yates] was being frank and truthful." **Id.** Moreover, Appellant contends that he "was denied his Constitutional Confrontation rights because he was effectively unable to cross-examine [Ms. Yates] on her prior statement, the only substantive evidence against Appellant." **Id.** at 12 (citation omitted).

We reject Appellant's arguments. First, we disagree with Appellant that the trial court found Ms. Yates's memory loss to be credible. Rather, the following occurred at trial:

> [The Commonwealth]: Your Honor, I mean, if you're going to pick a victim to rob, [Appellant] picked the perfect victim. He was hoping that if it ever did come to court, which he probably wasn't counting on, he was hoping that this is exactly the dialogue that would be taking place, that Ms. Bonita Yates would be [] being bashed for who she is.
>
> [The court]: She seems all right today. I mean, she came in here, she sat there, she hasn't been drinking. And if she's taking meds, she's not overdoing it. But she seems okay today.
>
> So it comes down to, can I believe the detective when the detective says she was okay that night. She came in and we talked and she was fine. Because the only evidence that she was drinking, … the first cop on the scene, he doesn't say anything about drinking or drugs, either; does he?
>
> [Appellant's attorney]: I don't think he asked her.
>
> [The court]: So the only one who says that she was drinking is her as an explanation for why she doesn't remember anything now.

- 6 -

[The Commonwealth]: Correct.

***

[The Court]: [] Count one is aggravated assault, I'm convinced [Appellant] did it, along with the conspiracy with somebody else unidentified. Simply because I believe the detective. The detective said she spoke to the complainant that night and she gave a lucid account of what took place.

I saw [Ms. Yates] in court today. I mean, she's not – there's no reason to doubt her today. She probably was intimidated, she lives in the neighborhood, she's concerned. [Appellant] was on the phone telling people to go out and talk to her, talk to Cox.[4] [Appellant's] not going to benefit from that. I'm not going to allow him to benefit from that. She's just afraid when she comes into court. But that night, having just been robbed, she told the detective what happened.

N.T. at 76-77, 81-82. Rather than crediting Ms. Yates's memory loss, the trial court found that Ms. Yates was intimidated and afraid of coming to court, and it declared that it would not let Appellant benefit from directing people to approach her about the case. Further, the trial court accepted the testimony of the detective, who stated that Ms. Yates seemed coherent during the interview and did not appear to be under the influence at the time. Thus, it

---

[4] For context, the Commonwealth admitted into evidence prison phone calls made by Appellant, where he was ostensibly instructing another person to talk to Ms. Yates and Mr. Cox before trial. **See** N.T. at 66-68; Commonwealth's Exhibit 4; **see also** Commonwealth's Brief at 3-4. Further, Detective Kuchinsky — who interviewed Ms. Yates on the night in question — testified that Ms. Yates told her during the interview, "I'm scared for my family. Now I'm going to have to move. He know[s] where my mom lives." N.T. at 57; **see also** Commonwealth's Exhibit 1.

did not accept Ms. Yates's claim that she had been drinking on the night in question, and consequently could not remember.[5]

---

[5] Appellant does not argue that, even if the trial court had discredited Ms. Yates's memory loss, her prior statement to police fails to qualify as a prior inconsistent statement under the **Brady/Lively** rule and Pa.R.E. 803.1(1). Thus, he has waived this argument. **Lackner v. Glosser**, 892 A.2d 21, 29-30 (Pa. Super. 2006) ("[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention.") (citations omitted).

Nevertheless, we point out that — since the time of Appellant's trial in 2016 — Pa.R.E. 803.1 has been amended to include a provision specifically for a prior statement by a declarant-witness who claims an inability to remember the subject matter of his or her statement, and the court finds the claimed inability to remember to be incredible. **See** Pa.R.E. 803.1(4) (effective April 1, 2017). The comment to that rule provides, in pertinent part:

> The purpose of this hearsay exception is to protect against the "turncoat witness" who once provided a statement, but now seeks to deprive the use of this evidence at trial. It is intended to permit the admission of a prior statement given under demonstrably reliable and trustworthy circumstances, **see, e.g.**, **Commonwealth v. Hanible**, 30 A.3d 426, 445 n.15 (Pa. 2011), when the declarant-witness feigns memory loss about the subject matter of the statement.

In **Hanible**, our Supreme Court determined that the defendant's counsel was not ineffective for failing to object to the introduction of a witness's prior inconsistent statement under Pa.R.E. 803.1(1) where, among other things, the witness later claimed at a murder trial that the police forced him to make and sign the prior statement, and that he actually knew nothing about the murders. **See Hanible**, 30 A.3d at 436, 445-46. Similar to the witness in **Hanible**, Ms. Yates did not dispute that she made the statement and did not deny its contents, but represented that she could not recall the incident because she had been drinking. Thus, even though Ms. Yates did not deny the contents of her prior statement at trial, we would likewise deem Ms. Yates's prior statement admissible under Pa.R.E. 803.1(1).

Second, we determine that Appellant was not denied his Constitutional Confrontation rights because he "was effectively unable to cross-examine [Ms. Yates] on her prior statement…." *See* Appellant's Brief at 12 (citation omitted). At the outset, we agree with the Commonwealth that Appellant has waived this argument by failing to cite to any authority in support. *See Lackner*, *supra*; *see also* Commonwealth's Brief at 7 (arguing waiver). Notwithstanding, even if not waived, no relief would be due on this basis. In *Carmody*, we rejected a similar argument, ascertaining that a previously signed and adopted written statement could be admitted as substantive evidence even though the complainant in that case later testified that her statement was unreliable because she was intoxicated at the time she gave it. *See Carmody*, 799 A.2d at 145, 148-49. In her written statement given to police on the night in question, that complainant described an assault in detail, but later at a preliminary hearing represented that she "had been drinking on the night of the incident and had a 'blackout.' As a result, she could not remember anything that happened on that night. Further, she claimed that nothing she said or wrote on that date was reliable." *Id.* at 145. On appeal, this Court rejected the position that the complainant's "blackout precluded any meaningful opportunity to cross-examine her on the veracity of her written statement." *Id.* at 148. Instead, we observed that both parties had the opportunity to question the complainant as to why she said one thing on the night in question and something entirely different at the preliminary hearing. *See id.* at 149. We stated that "[t]he *substance* of [the

- 9 -

complainant's] answers does not dictate *whether she was subject* to cross-examination. The question is whether she testified about the prior statement, not what she responded when she testified." ***Id.*** (emphasis in original). Accordingly, this Court concluded that the complainant's written statement was admissible as substantive evidence under the ***Brady/Lively*** rule. ***Id.***

As the Commonwealth points out, like the defendant in ***Carmody***, Appellant had the chance to cross-examine Ms. Yates "about a variety of topics, including the medications she was taking on the date in question, her alcohol use, and whether her illness ever caused her to hallucinate. Had [Appellant] chosen, he also could have elicited more information about her claimed memory loss or other susceptibilities." Commonwealth's Brief at 8-9 (citations omitted). We agree. Accordingly, we would conclude that the trial court did not improperly admit Ms. Yates's statement as substantive evidence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/5/19</u>