J-A08021-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SULTAN FREEMAN | : | |
| | : | |
| Appellant | : | No. 1046 EDA 2020 |

Appeal from the Judgment of Sentence Entered October 7, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007026-2016

BEFORE: PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                           **FILED: MAY 14, 2021**

Sultan Freeman (Appellant) appeals from the judgment of sentence imposed after a jury found him guilty of aggravated assault, firearms not to be carried without a license, and possession of an instrument of crime (PIC), and the trial court in a separate bench trial convicted him of persons not to possess firearms. **See** 18 Pa.C.S.A. §§ 2702(a)(1), 6106(a)(1), 907, 6105(a)(1). After review, we vacate the judgment of sentence and remand for resentencing.

The trial court provided a detailed recitation of the facts as follows:

> This case involves a shooting that happened on June 4, 2015, at 5:15 p.m. at an apartment building located in the 1400 block of Clearview [Street], in the City and County of Philadelphia. The complainant in this case is the Appellant's uncle, Ibin Islam [("the victim" or "Islam")], who was shot in the abdomen at point-blank range over a dispute about a $1,500.00 debt.

---

[*] Former Justice specially assigned to the Superior Court.

The Commonwealth's first witness, Sergeant Randall Goodson, testified that on June 4, 2015, he received a radio call for a shooting on the 1400 block of Clearview, while in a patrol car with his partner, Officer Tucker. They arrived at 1416 Clearview Street, which is an apartment complex, within a minute or two from the radio call. When they entered the building, they saw the [victim] on the floor of the elevator cab, having been shot in the stomach, surrounded by several other people. Sergeant Goodson described it as a "chaotic" scene where a crowd of people had gathered. Medics transported the [victim,] who was mostly unresponsive to questioning. Sergeant Goodson testified that he learned that the [victim] was identified as [] Islam and that the shooting took place in Apartment F 422. N.T., 7/9/19, at 28-35.

Sergeant Goodson, along with other officers, went to the fourth floor of the building and encountered more people and other officers in the hallway. [Sergeant Goodson] spoke to Mary Oakman, who was later identified to be Appellant's aunt. Sergeant Goodson learned that the [victim] may have been shot by his nephew; however, [Sergeant Goodson] noted on the 75-48 preliminary report that the name of the offender in this incident was "Shakeem Jordan." *Id.* at 38, 39.

Next, [Islam], aka Evan Jordan, testified. He identified [] Appellant as his nephew, Sultan Freeman, sitting at counsel table. [Islam] explained that prior to being shot, he was taking care of his elderly mother and waiting for Appellant to relieve him. After Appellant arrived, [Islam] proceeded to the stairwell to smoke PCP with his "man," Eric. Mr. Islam then explained that he and Eric got into an altercation about money and Eric shot him. N.T., 7/10/19, at 5-10.

Islam also explained that on the same day, he had an argument on the telephone with Appellant, because it was taking him (Appellant) too long to get to the apartment to relieve [Islam]. *Id.* at 11, 12.

The Commonwealth then attempted to confront Islam with a statement that he purportedly gave to the police when he was in the hospital, wherein he identified Appellant as the shooter. Islam explained that he was high on PCP and was given morphine in the hospital, so he doesn't recall what he told the police in his statement. In a long and painful exchange, [Islam] was asked whether he could identify his signature on the various pages of

the statement. Islam equivocated about whether he recognized the signature, giving responses of "no," "maybe," "it looks like" and "yes" to the prosecutor's questions. Eventually, [Islam] agreed that the signatures on pages 1, 2 and 4 looked like they were his. He also identified the personal information in the statement, such as his social security number and date of birth as being correct. *Id.* at 17, 18.

The prosecution was then permitted to confront Islam with the substance of [Islam's prior police] statement. In short, Islam testified that he didn't remember telling detectives it was his nephew, [Appellant], who shot him; that Appellant shot him with a silver revolver in his mother's apartment; that [Islam] owed [Appellant] $1,500.00; or that [Islam] crawled into the elevator after being shot and rode it down to the 1st floor. When confronted with a photo of [Appellant], Mr. Islam identified it as his nephew, [Appellant], and stated that the signature on the photograph "sort of looks like mine, but I'm not too sure." *Id.* at 25-27.

Islam testified that he did recall sending [a] notarized letter to the district attorney's office on October 3, 2017, while he was incarcerated, wherein he stated that it was not [Appellant] who shot him; however, [Islam] did not identify anyone as the shooter. And he recalled testifying at the preliminary hearing that he didn't know who shot him. *Id.* at 52, 53.

Finally, Mr. Islam was asked to view several videotapes. He identified his nephew, Appellant, getting on the elevator of the apartment building at 5:15 p.m.[, *i.e.*, the approximate time of the shooting.] [Islam] then identified himself on the elevator at 5:20 p.m. In the video played for the jury, Islam is laying face-down on the elevator floor.

Detective William Knecht next testified that he and his partner, Detective Knoll, were the assigned detectives on this case. [On the evening of the shooting, t]hey did not respond to the scene but went directly to Einstein Hospital to interview [Islam]; however, he had already been taken into surgery. They returned to interview [Islam] the next day at Einstein Hospital. Detective Knecht stated that he was able to take a full statement from Mr. Islam, . . . wherein [Islam] identified Appellant as his nephew who shot him. *Id.* at 56-63, 66-67. [Importantly, Islam signed his name on pages of the written statement, in the presence of Detective Knecht.] Detective Knecht also took a

statement from Fire and Rescue unit Lieutenant Keith Davis, wherein Lieutenant Davis asked [Islam] who shot him, and [Islam] responded "My nephew shot me . . . Shakeem Freeman." *Id.* at 83, 84. [Islam] also testified that during the course of the investigation there were "a couple of different names" given to police regarding the shooter. *Id.* at 74.

The detectives recovered videotape of the elevator and the fourth-floor hallway from the Philadelphia Housing Authority. Detective Knecht testified that the video taken on June 5, 2015 shows the gunshot victim crawling to the elevator on the 4th floor. *Id.* at 68. In addition, Detective Knecht produced a certificate showing that the Appellant was not licensed to carry a firearm in Pennsylvania. *Id.* at 64.

Natalie Micciche, employed by the First Judicial District Adult Probation and Parole Department ("APPD"), testified that on May 25, 2016, she interviewed an individual named Evan Jordan, a/k/a [] Islam, while preparing a presentence report for a case in which Islam was the defendant. During the interview, Mr. Islam told her that he had been shot in the stomach by his nephew, [Appellant]. N.T., 7/9/10, at 86-88.

The Commonwealth then presented Tamara Williams, who lived in Apartment F420 at 1416 Clearview Street on June 4, 2015. She explained that she heard loud arguing from the apartment next door as she returned home from work. She heard loud yelling and then banging on her door. When she opened her door, she saw her next-door neighbor, Mary (now deceased) who was asking for help for a man lying on the floor who had been shot. Although she didn't know his name, she recognized him from the apartment next door. Ms. Williams said that the man on the floor crawled down the hall and into the elevator. She called 911. N.T., 7/10/19, at 94-100.

Detective Knoll testified that an arrest warrant was obtained for the Appellant on June 10, 2015; however, despite many attempts to locate Appellant, he was not apprehended until July 7, 2016. [Knoll] confirmed that there were no efforts made to investigate individuals named Shakeem Freeman or Shakeem Jordan. *Id.* at 110-17.

Detective Patrick Murray was the crime scene investigator. He testified that the crime scene was established at 5:18 p.m. at

Apartment 422. He recovered an item of mail from the apartment in the name of Sultan Freeman. *Id.* at 120-24. He did not observe blood in the hallway or the apartment. The elevator was photographed but nothing of evidentiary value was obtained from the elevator or hallways. *Id.* at 126-27. [Pertinently, the firearm that was used in the shooting was also never recovered.]

The parties stipulated that Mr. Islam underwent surgery at Albert Einstein Hospital for a single gunshot wound to his abdomen. Areas of damage were observed in his upper intestines, and 25 centimeters of bowel was removed. *Id.* at 130-31.

After deliberation, the jury convicted Appellant of aggravated assault, [firearms not to be carried without a license, and PIC; the jury acquitted Appellant of attempted murder]. Thereafter, Appellant was convicted of [persons not to possess firearms] by way of a [bifurcated] bench trial. Appellant was sentenced to ten – twenty years on the aggravated assault; two – four years on [firearms not to be carried without a license,] to run consecutively; [and] two – four years on [PIC, to run consecutively]. There was no sentence entered [for persons not to possess firearms].

Trial Court Opinion, 8/12/20, at 1-6 (citations modified, some capitalization and numbering omitted).

On October 16, 2019, Appellant timely filed a post-sentence motion. Appellant challenged the weight of the evidence supporting his convictions and claimed the court imposed a manifestly excessive sentence. Appellant's post-sentence motion was denied by operation of law. Appellant timely filed a notice of appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents 6 issues for our review:

1. Did the trial court commit reversible error by admitting as substantive evidence the victim's prior inconsistent statements identifying [Appellant] as the shooter because they did not meet

the reliability criteria set forth by the Pennsylvania Supreme Court in *Commonwealth v. Brady*, 507 A.2d 66 (Pa. 1986), *Commonwealth v. Lively*, 610 A.2d 7 (Pa. 1992) and *Commonwealth v. Wilson*, 707 A.2d 1114 (Pa. 1998), in that the prior inconsistent statements were not given under oath at a formal proceeding, reduced to a writing signed and adopted by the victim or contained in a contemporaneous verbatim electronic, audio taped or video taped recording?

2. Did the trial court commit reversible error by prohibiting defense counsel from cross-examining a Commonwealth witness regarding the victim's specific criminal charges pending against him when he made his prior statements implicating [Appellant,] and was defense counsel ineffective in failing to cross-examine the victim himself or present extrinsic evidence on the subject where the evidence may have exposed the victim's possible bias in favor of the prosecution, in violation of [Appellant's] confrontation rights under the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution and in light of the Supreme Court's holding in *Davis v. Alaska*, 415 U.S. 308 (1974)?

3. Did the trial court commit reversible error at certain times and was trial counsel ineffective at other times by allowing inadmissible hearsay from police witnesses who testified that out-of-court declarants said [Appellant] was the shooter; the cumulative effect resulted in the jury hearing incriminating out-of-court statements from numerous declarants who were not under oath or subject to cross-examination, in violation of [Appellant's] constitutional rights to confrontation and to a fair trial?

4. Did the trial court commit reversible error by instructing the jury that [Appellant] could not legally own a gun where there was no evidence presented at trial demonstrating that [Appellant] was a person prohibited from owning a gun, as opposed to a person not licensed to conceal and carry a gun in public, and where the instruction improperly conveyed to the jury that [Appellant] had a prior criminal record?

5. Was the evidence insufficient as a matter of law to support [Appellant's] conviction for carrying a firearm in a vehicle or concealed on his person in violation of 18 P.S. § 6106 because there was no proof (1) as to the barrel or overall length of the

handgun used in the shooting to satisfy the legal definition of "firearm," (2) that the handgun was carried by [Appellant] in a vehicle or concealed on his person outside his place of abode, or (3) that [Appellant], as opposed to a person named Sayide Alislam, was not licensed to carry a firearm on the date of the incident?

6. Did the trial court abuse its discretion by imposing a sentence outside and above the guidelines without providing adequate reasons on the record for imposing such a sentence?

Appellant's Brief at 4-6.

Initially, Appellant argues, in connection with his second and third issues, that trial counsel was ineffective. *See id.* at 30, 35. Generally, ineffectiveness claims may not be raised in the first instance on direct appeal. *Commonwealth v. Holmes*, 79 A.3d 562, 563 (Pa. 2013) (reaffirming general rule of deferral to Post Conviction Relief Act (PCRA) review of ineffectiveness claims set forth in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002)). Appellant claims he meets an exception to the general rule of deferral announced in *Holmes*, *supra* (*Holmes* exception). *See* Appellant's Brief at 30, n.3. The *Holmes* exception states in pertinent part that ineffectiveness claims can be raised on direct appeal where "a discrete claim or claims of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice." *Holmes*, 79 A.3d at 563.

Our review of the record discloses no support for Appellant's undeveloped claim that he established the narrow *Holmes* exception. Aside from citing *Holmes*, Appellant does not explain why the exception is

applicable in this case. *See* Appellant's Brief at 30, n.3. It is not our role to develop Appellant's argument for him or scour the record to find evidence to support an undeveloped claim. *See Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*). Accordingly, we dismiss Appellant's ineffectiveness claims without prejudice. *See Commonwealth v. Tukhi*, 149 A.3d 881, 889 (Pa. Super. 2016) (where a defendant fails to establish the *Holmes* exception, all ineffectiveness claims presented on direct appeal are frivolous and must be deferred until collateral review); *see also Grant*, 813 A.2d at 738.

In his first issue, Appellant contends the trial court erred in admitting evidence of Islam's prior inconsistent statements implicating Appellant as the shooter. *See* Appellant's Brief at 20-30. Appellant asserts that Islam's prior statements, which were the only direct evidence against Appellant, were neither given under oath nor signed and adopted by Islam. *Id.* at 20, 29; *see also id.* at 25 ("the victim's prior out-of-court statement to Detective Knecht, although questionably signed by the victim, was never separately 'adopted' by the victim.").

Our standard of review concerning a challenge to the admissibility of evidence is as follows:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or

partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012) (citations and quotation marks omitted).

This Court has explained:

[A] prior inconsistent statement may be offered not only to impeach a witness, [*see* Pa.R.E. 613,] but also as substantive evidence if it meets additional requirements of reliability. *Lively*, 610 A.2d at 9-10; Pa.R.E. 803.1. The test is a two-part inquiry: 1) whether the statement is given under reliable circumstances; and 2) whether the declarant is available for cross-examination. *Commonwealth v. Brewington*, 740 A.2d 247, 254 (Pa. Super. 1999)[.] With respect to the first prong, that the statement is given under reliable circumstances, our Supreme Court has deemed reliable only certain statements; among them is a statement that is "reduced to a writing and signed and adopted by the witness." *Lively*, 610 A.2d at 10. *See also* Pa.R.E. 803.1(1) [(exception to rule against hearsay regarding prior inconsistent statements of a declarant-witness)]. With respect to the second prong, cross-examination, the inconsistent statement itself must be the subject of the cross-examination in order to satisfy the test. *Commonwealth v. Romero*, 722 A.2d 1014, 1017 (Pa. 1999)[.]

*Commonwealth v. Carmody*, 799 A.2d 143, 148 (Pa. Super. 2002) (footnote and brackets omitted, citations modified).

Pennsylvania Rule of Evidence 803.1 provides a hearsay exception applicable to a "turncoat witness," such as Islam, who testifies and is subject to cross-examination about a prior inconsistent statement. Specifically, the Rule permits admission of a

prior statement by a declarant-witness who testifies to an inability to remember the subject matter of the statement, unless the court finds the claimed inability to remember to be credible, and the statement:

(A) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition;

(B) is a writing signed and adopted by the declarant; or

(C) is a verbatim contemporaneous electronic recording of an oral statement.

Pa.R.E. 803.1(4); *see also Commonwealth v. Hanible*, 30 A.3d 426, 445 (Pa. 2011).

Here, the trial court found Islam's prior inconsistent statements admissible as substantive evidence, reasoning:

[Islam], after identifying the Appellant as the shooter to police, had [] several memory lapses throughout the court proceeding, whereby he had no recollection of the identity of the shooter when he testified at the preliminary hearing, and again at trial when he identified someone named Eric as the shooter. Clearly, [Islam's] statement given to police identifying Appellant as the shooter was inconsistent with the testimony [Islam] gave at the preliminary hearing and at trial. It was permissible for the Commonwealth to confront Islam with the inconsistencies.

* * *

Appellant's challenge to the admissibility of [Islam's prior inconsistent] statement due to [Islam's] purported faltering memory at trial does not prevail. The collective sum of the evidence concerning the circumstances under which [Islam] gave the statement, to wit: Islam's agreement that he did, indeed, sign at least three out of the five pages contained [in Islam's statement given to Detective Knecht]; [Islam's] identification of his personal information on the statement; and Detective Knecht's testimony concerning the circumstances under which he took the statement, makes it plain that admission of the statement falls squarely within the meaning of Rule 803.1(4). The court did not abuse its discretion by allowing Islam to be confronted with the substance of the statement, wherein he disavowed his identification of Appellant as the shooter and then claimed for the first time that someone named Eric was the shooter. Based upon that, it was

- 10 -

> proper for the jury to evaluate the testimony Islam gave at trial as well as the identification he made in the statement as substantive evidence.

Trial Court Opinion, 8/12/20, at 10, 15 (some capitalization and numbering omitted). As the trial court's rationale is supported by the record and the law, it did not err in admitting Islam's prior inconsistent statements as substantive evidence. *See, e.g., Commonwealth v. Ragan*, 645 A.2d 811, 818 (Pa. 1994) (holding that witness's prior police statement, which was reduced to writing and signed by the witness – but which the witness repudiated at trial – was admissible as substantive evidence because the requirements of *Lively*, *supra* were satisfied). Appellant's first issue fails.

Next, Appellant argues the trial court improperly precluded him from introducing evidence of certain criminal charges that were purportedly pending against the victim when he gave the prior statements implicating Appellant as his assailant. *See* Appellant's Brief at 30-35. Appellant alleges the charges were persons not to possess firearms and possession with intent to deliver a controlled substance, 35 P.S. § 780-113(a)(30). Appellant's Brief at 32; *see also* Trial Court Opinion, 8/12/20, at 16, 18. Appellant claims the trial court's erroneous ruling in this regard deprived him of his right of confrontation and to inquire into the victim's possible bias in favor of the prosecution. Appellant's Brief at 33.

Pennsylvania Rule of Evidence 608(b)(1) provides that, except for evidence relating to a conviction for a *crimen falsi* crime, *see* Pa.R.E. 609,

"the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct[.]" Pa.R.E. 608(b)(1); *see also* Pa.R.E. 608, cmt. (the Rule "prohibits the use of evidence of specific instances of conduct to support or attack credibility"). Rule 609 provides: "For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved **dishonesty** or **false statement**." Pa.R.E. 609(a) (emphasis added).

Here, neither persons not to possess firearms nor possession with intent to deliver a controlled substance are *crimen falsi* offenses. *See, e.g., Commonwealth v. Williams*, 573 A.2d 536, 538 (Pa. 1990); *see also* Pa.R.E. 609(a). Accordingly, the trial court did not err in precluding the defense from introducing this evidence under Rule 608(b)(1). In any event, Appellant claims the charges were "pending" against the victim; it is well settled that "the veracity of a witness may not be impeached by prior arrests which have not led to convictions." *Commonwealth v. Chmiel*, 889 A.2d 501, 534 (Pa. 2005). Appellant's second issue is meritless.

Appellant next asserts the trial court erred in admitting hearsay testimony from several Commonwealth witnesses who implicated Appellant as the shooter. *See* Appellant's Brief at 35-38. Appellant states:

> the inadmissible hearsay presented to the jury included Detective
> Knecht's testimony that Lieutenant Davis told him that the victim

said [Appellant] was the shooter. Sergeant Gordon testified twice that other out-of-court declarants told him that [Appellant] was the shooter. Neither Lieutenant Davis nor any of the other out-of-court declarants were called as witnesses at trial.

*Id.* at 36.

Initially, we address whether Appellant preserved this claim for review. The trial court found Appellant had waived this issue for vagueness in his Rule 1925(b) statement.[1]  **See** Trial Court Opinion, 8/12/20, at 19.  The court stated:

Appellant fails to specify [the] evidence from which witnesses form the basis for his complaint. Four police officers testified at trial. There were numerous out-of-court identifications of the shooter with different names and aliases. Because Appellant fails to specify the testimony being challenged, this court is left to guesswork.

*Id.*

We agree that Appellant has waived this issue. Rule 1925(b) mandates that the "Statement shall concisely identify each ruling or error that the appellant intends to challenge **with sufficient detail** to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii) (emphasis added). Rule 1925(b) "is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal." **Commonwealth v. Bonnett**, 239 A.3d 1096, 1106 (Pa. Super.

---

[1] The wording of this issue in Appellant's concise statement mirrors the wording in Appellant's statement of questions presented, **supra**.

- 13 -

2020); **see also** Pa.R.A.P. 302(a) (issues cannot be raised for the first time on appeal). We have found that a Rule 1925(b) statement that is too vague to allow the trial court an opportunity to identify the issues raised on appeal is the functional equivalent of no statement at all. **Commonwealth v. Cannon**, 954 A.2d 1222, 1228 (Pa. Super. 2008). A trial court's "review and legal analysis can be fatally impaired when the court has to guess at the issues raised. Thus, if a concise statement is too vague, the court may find waiver." **Commonwealth v. Hansley**, 24 A.3d 410, 415 (Pa. Super. 2011) (citations omitted). Accordingly, the vagueness of Appellant's concise statement results in waiver of his third issue. **See id.**

However, even if this issue was not waived, we would conclude it lacks merit. **See** Trial Court Opinion, 8/12/20, at 19-20; **but see also Bonnett**, 239 A.3d at 1106 ("even if the trial court correctly guesses the issues [a]ppellant raises on appeal and writes an opinion pursuant to that supposition the issues are still waived") (citation and brackets omitted).

In his fourth issue, Appellant argues the trial court erred when it instructed the jury that Appellant could not legally own a gun, which was so prejudicial as to deprive Appellant of a fair trial. **See** Appellant's Brief at 38-40. Appellant claims this instruction improperly "conveyed to the jury that [Appellant] was a person with a prior criminal record." **Id.** at 39.

During deliberations, the jury submitted written questions to the trial court, one of which asked: "Can [Appellant] legally own a gun?" N.T.,

- 14 -

7/11/19, at 6. In response, the court and counsel discussed an exhibit that had already been admitted into evidence without objection, *i.e.*, a "certificate of nonlicensure" to carry a firearm. *Id.* Appellant's counsel proposed that the trial court respond to the jury's question by submitting the certificate of nonlicensure for the jury's consideration. *Id.* However, as the document bore the name of Appellant's alias, the trial court believed the jury may be confused because they were unfamiliar with Appellant's alias. *See id.* at 7-10. Accordingly, the court ruled, over defense counsel's objection, that it would answer the jury's question by replying "No." *Id.* at 11.

We note:

> In examining jury instructions, our scope of review is limited to determining whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled. In reviewing a trial court's charge to the jury we must look to the charge in its entirety. Because this is a question of law, this Court's review is plenary.

*Graham v. Check*, 243 A.3d 153, 161 (Pa. 2020) (citation, footnote, and ellipses omitted); *but see also id.* ("[e]ven when we find error in a jury charge, we grant relief only when we determine that the error was prejudicial to the objecting party.").

Appellant asserts:

> [N]o evidence was introduced at trial showing that [Appellant] could not 'own' a gun, which is distinguishable from being legally entitled to carry and conceal one in public. The trial court's

- 15 -

instruction may have been proper based on extraneous information regarding [Appellant's] criminal record that was not introduced into evidence. But the instruction was improperly based on the specific evidence before this jury.

Appellant's Brief at 39.

Conversely, the Commonwealth states: "[Appellant] did not raise that claim at trial as a basis for objecting to the trial court's answer to the jury's question. His current claim is, therefore, waived." Commonwealth Brief at 20. Upon review, we find the record supports the Commonwealth's assertion, and we thus could find waiver. *See Commonwealth v. Gooding*, 818 A.2d 546, 552 (Pa. Super. 2003) (failure to make a timely, specific objection to a jury instruction waives challenge to content of the instruction on appeal); *see also Commonwealth v. Montalvo*, 956 A.2d 926, 935 (Pa. 2008).

However, even if the trial court erred in its response to the jury's inquiry, such error does not merit relief. *See Commonwealth v. Purnell*, 233 A.3d 824, 833 n.5 (Pa. Super. 2020) (even if the trial court erred in instructing the jury, such error is harmless where the evidence of the accused's guilt is overwhelming); *see also Ragan*, 645 A.2d at 820 ("an error may be deemed harmless when the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict.").

The evidence of Appellant's guilt in this case was overwhelming. The victim identified Appellant as his assailant in several statements he gave to

authorities after the shooting. To the extent the victim disavowed his statements at trial, it was within the province of the jury to evaluate the credibility of the victim's disavowal. *See Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (juries are "free to believe all, part, or none of the evidence and to determine the credibility of the witnesses."). Appellant's fourth issue fails.

Appellant next argues his conviction of firearms not to be carried without a license, 18 Pa.C.S.A. § 6106(a)(1), cannot stand because the Commonwealth failed to prove all elements of the crime beyond a reasonable doubt. *See* Appellant's Brief at 41-45.

We recognize:

> When reviewing a sufficiency of the evidence claim, this Court must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner, and we must determine if the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. This Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed. Moreover, a jury may believe all, some or none of a party's testimony.

*Commonwealth v. Burns*, 765 A.2d 1144, 1148 (Pa. Super. 2020) (citations and paragraph break omitted). "It is axiomatic that the Commonwealth bears the burden of proving every element of the offense beyond a reasonable doubt." *Commonwealth v. Lopez*, 565 A.2d 437, 439 (Pa. 1989).

Under section 6106, "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in

his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S.A. § 6106(a)(1). The Pennsylvania Supreme Court has explained that this crime requires the Commonwealth to prove three elements:

> (a) that the weapon was a firearm, **Commonwealth v. Todd**, 384 A.2d 1215 (Pa. 1978) (superseded by statute on other grounds); (b) that the firearm was unlicensed, **Commonwealth v. McNeil**, 337 A.2d 840 (Pa. 1975); and (c) that where the firearm was concealed on or about the person[.]

**Lopez**, 565 A.2d at 439 (citations modified).

Section 6106(a) is part of the Uniform Firearms Act,[2] which defines "firearm" as: "[a]ny pistol or revolver with a barrel length less than 15 inches, . . . or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches." 18 Pa.C.S.A. § 6102. Barrel length – or overall length – of a firearm is an essential element of section 6106(a). **Todd**, 384 A.2d at 1217. Length of a firearm may be proven by direct and/or circumstantial evidence. **Commonwealth v. Rozplochi**, 561 A.2d 25, 31 (Pa. Super. 1989).

Appellant emphasizes that the Commonwealth never produced the firearm involved in the shooting. Appellant's Brief at 42. Appellant further states, "[t]here was no description of either the barrel or overall length of the gun used in the assault." **Id.**

The trial court found this argument to have merit, explaining:

---

[2] **See** 18 Pa.C.S.A. §§ 6101-6127.

In the statement [Islam] gave to Detective Knecht, Islam stated that he and his nephew, [Appellant], were in his mother's apartment when they got into an argument over money. [The prosecutor and Islam discussed this matter:]

[The prosecutor]: This is your continued answer. "Over money [Appellant] gave me. I didn't have his money because things didn't work out like I thought. So he kept saying, quote, I want my money now. I told him that I didn't have it now. He pulled out a gun. He left it at his side." Do you remember telling detectives that is what happened?

A: No.

Q: Did I read it right?

A: Yes, according to this paper.

N.T., 7/10/19, at 22.

Further, in [Islam's prior police] statement, he said that he was shot by his nephew "Sultan Freeman, he is my brother, Frederick Jordan's son" and [Appellant] used a "silver revolver." *Id.* at 25-27. [At trial, Islam testified he did not remember the type of firearm that was used to shoot him. *Id.* at 24.]

Detective Murray, who testified that he processed the crime scene, explained that there were no fired cartridge casings recovered at the scene. He explained that a revolver does not eject casings because the gun is "self-contained," meaning that when the gun is fired, the casing stays within the cylinder as it rotates and would therefore not be expelled. *Id.* at 128, 129. Finally, there was a stipulation by and between counsel that [Islam] suffered a single gunshot wound in his left abdomen that was treated at Einstein Hospital. *Id.* at 130.

* * *

In *Todd*, *supra*, the only evidence offered that described the gun was done so by a criminologist who had only a bullet to examine and therefore could not testify as to the length of the barrel from which the bullet was fired. The [Supreme C]ourt found

- 19 -

that this was insufficient evidence to support the firearms conviction.

Similarly, proof of barrel length was found to be lacking when a witness failed to describe the barrel length and there was no gun recovered. ***Commonwealth v. Rapp***, 384 A.2d 961, 962 (Pa. Super. 1978) [(where Commonwealth merely described the shotgun as a "twelve gauge, Ithaca pump Model 37, containing three shells," reversing conviction for lack of "proof that the shotgun constituted a prohibited 'firearm'" under section 6102)]. However, evidence was sufficient where the gun itself was admitted into evidence and available for the jury's inspection. ***Commonwealth v. Jennings***, 427 A.2d 231 (Pa. Super. 1981).

Here, the only evidence admitted was [Islam's] disavowed statement wherein he describe[d] the gun as a silver revolver, and Detective Murray's testimony that revolvers don't eject fired cartridge casings and that, indeed, none were recovered at the scene. Pursuant to the rulings in ***Rapp*** and ***Todd***, this would not be sufficient to sustain Appellant's conviction for [firearms not to be carried without a license,] and therefore this court recommends that said conviction be vacated.

Trial Court Opinion, 8/12/20, at 22-24 (citations modified, some capitalization and numbering omitted).

The trial court's analysis is supported by both the record and the law. The Commonwealth did not present any evidence of barrel or overall length of the gun aside from the victim's recanted statement that Appellant shot him with a "silver revolver." ***See, e.g., Rapp***, ***supra***; ***cf. Rozplochi***, 561 A.2d at 31-32 (where one witness testified defendant's weapon was inside an envelope that was "about this high" and "not too wide," and another witness testified defendant had a "small black gun," evidence was sufficient to show barrel length fell within prescribed dimensions defined in section 6102).

Additionally, we are persuaded by Appellant's argument in which he states:

> The Commonwealth also failed to prove beyond a reasonable doubt that [Appellant] ever carried the gun in a vehicle or concealed the gun on his person outside his place of abode. [**See** 18 Pa.C.S.A. § 6106(a)(1), **supra**.] There was evidence showing that [Appellant] lived at 1416 Clearview Street, Apartment F422. In his statement to Detective Knecht, the victim said that [Appellant] pulled out a gun and shot him once inside that apartment. The victim never testified from where [Appellant] pulled out the gun, *e.g.* a waistband, a holster, a drawer or from underneath a seat cushion. . . . **See Commonwealth v. Lopez**, 565 A.2d 437 (Pa. 1989) (the Commonwealth must prove, as an element of Section 6106, that the firearm was concealed on or about the person outside his place of abode); **Commonwealth v. Montgomery**, 192 A.3d 1198 (Pa. Super. 2018) (recognizing that concealment outside of the home is an element of Section 6106 that must be proven by the Commonwealth).

Appellant's Brief at 43. The record supports Appellant's claim that there was insufficient evidence to support the "concealment" element of section 6106(a). **See Lopez**, 565 A.2d at 439. Accordingly, we reverse this conviction.

Further, because the trial court ordered the sentence on this conviction to run consecutive to Appellant's sentences for aggravated assault and possessing an instrument of crime, our disposition disturbs the overall sentencing scheme. Thus, we vacate Appellant's judgment of sentence in its entirety and remand for resentencing.[3] **See Commonwealth v. Tanner**, 61 A.3d 1043, 1048 (Pa. Super. 2013) (holding "vacatur of a consecutive

---

[3] In light of our disposition, we need not address Appellant's sixth and final issue challenging the discretionary aspects of his sentence.

sentence in the context of a larger sentencing scheme necessitates vacatur of the entire sentence because such disposition disturbs the court's overall sentencing scheme."); *cf. **Commonwealth v. Thur***, 906 A.2d 552, 570 (Pa. Super. 2006) (vacation of an unlawful, concurrent sentence, which does not disturb sentencing scheme or aggregate length of sentence, does not require remand for resentencing).

Appellant's conviction of firearms not to be carried without a license reversed; all other convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/21